Winford Anthony WEEKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 40037.

Court of Criminal Appeals of Texas.

March 29, 1967.

Second Rehearing Denied May 10, 1967.

Third Rehearing Denied June 14, 1967.

Clyde W. Woody, Marian S. Rosen, William M. LauBach, Houston, for appellant.

Leon B. Douglas, State's Atty., Austin, Wiley Cheatham, Dist. Atty., Cuero, for the State.

AMENDED OPINION

MORRISON, Judge.

Our prior opinion is withdrawn, and the following is substituted in lieu thereof.

The offense is possession of heroin; the punishment, ten years.

Trial was had before the court without the intervention of a jury.

At a pre-trial hearing on appellant's motion to suppress, U. S. Customs Agent

Kline testified that at 2:00 p. m. on the day in question he received information by telephone from Customs Port Investigator Villareal that a delivery of heroin was to be made at a certain place in Alice, Texas, at 4:00 p. m., to two men in a certain colored pickup truck. Villareal received this information from an informer who had given him reliable information in the past. Kline testified that the same informer had given him reliable information in the past. Kline left Laredo in great haste in an effort to intercept the described pickup, but burned up the motor in his car. At some point in his chase, Kline received a radio message from Villareal who stated that he had seen the described pickup, gave Kline the license number and reported that he had received information that the two men riding therein had received the delivery of heroin.

Since he was unable to continue his pursuit of the pickup, Kline went to the Sheriff's Office in Beeville and asked that the Department of Public Safety be notified of the description of the pickup and requested that it be stopped because it was transporting narcotics.

Dispatcher O'Neil of the Calhoun County Sheriff's Office testified that at 6:55 p. m. on the day in question he received a radio message from the Department of Public Safety to "Pick up and hold for Narcotics Division a white and turquoise pickup, License number 4k5298", and that he immediately transmitted such information to Deputy Sheriff Warren. He further stated that at 7:13 p. m. he received a radio message from Warren stating, "Have a pickup ahead of us traveling at a high rate of speed, advise city unit to stand by to intercept." At 7:15 p. m. he received a message from Warren's radio "that we have the pickup in custody."

Warren and his fellow officer King testified that they spotted the described pickup and gave chase, that it turned into Edward's filling station and as appellant and his co-indictee alighted, they placed them under arrest, handcuffed them and searched their persons for weapons.

The above we have concluded is a fair summary of the facts prior to the arrest, and we pause here to discuss the cases relied upon by appellant as authority for his contention that the arrest was unlawful. In Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, according to the majority opinion, all the arresting officer knew prior to placing Beck under arrest was that he had seen a police picture of Beck and knew that he had a record for operating a scheme of chances, whereupon he left the station house looking for Beck. In the case at Bar, Customs Inspector Villareal had been told by an informer who had proven himself reliable that a quantity of heroin was to be delivered at a specified place that afternoon in the city of Alice to someone who was driving a particularly described pickup and transmitted that information to Kline. Kline later received the license number of the pickup and information that a delivery had been effected. Kline, because of motor trouble, was unable to pursue the described pickup and had an all-points radio message transmitted to the other officers of the State. Warren received the message, saw the pickup and effected the arrest.

■ This Court in Jones v. State, 171 Tex.Cr.R. 608, 352 S.W.2d 270, upheld an arrest made by Louisiana officer who had learned from a police radio broadcast that an arrest warrant had been issued for Jones and his companion and were alerted to be on the lookout for a 1949 Buick bearing a California license plate and who arrested Jones when they saw him in an automobile of that description parked in a filling station. We have concluded that probable cause here exists.

The case before us does not present the same analogy as is set forth in Aguillar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. In footnote 4 the Court reasons that the officer who initiated the chain of events which resulted in the arrest of the accused had only a suspicion. We recapitulate, Villareal had been told by a reliable informer that a delivery was to be made to persons in a definitely described motor vehicle at a definite time and place. After this Villareal saw the motor vehicle and was informed that delivery had been effected. These facts were made known to Officer Kline. These facts also distinguish the case at bar from Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465, upon which appellant relies because in that case the arresting officer was not shown to have acted at the direction or request of any officer who had reasonable grounds for believing the accused had committed a felony.

■ Likewise in Marh v. United States, 5 Cir., 344 F.2d 317, the record failed to reveal what the Customs Agent on the border knew about Martinez' activities which caused him to request the Duval County Constable to arrest him. From this case it is apparent that the test as to probable cause is the information known to the officer who requests another officer to effect an arrest. The case at bar, like Marsh v. United States, supra, is not one in which an officer arrests on his own initiative, but upon the request of another officer. If the requesting officer is in possession of sufficient knowledge to constitute probable cause, then he need not detail such knowledge to the arresting officer. In other words, if the officer who initiates the request for arrest is in possession of sufficient knowledge to constitute probable cause, then he may transmit to the officer who makes the arrest only such information as is necessary for him to know who is wanted. In Smith v. United States, 123 U.S.App. D.C. 202, 358 F.2d 833, the United States Court of Appeals said, "The knowledge or information of the arresting officer at the time of the arrest is relevant *only* where an arrest is predicated on that officer's personal observation and information concerning the criminal act."

The question of prime importance in this case is the legality of the search of appellant's pickup. After appellant and his co-indictee were placed under arrest, Chief Deputy Sheriff Roberts arrived in his police automobile and Edwards remonstrated with him about the fact that the police were blocking the driveway to his station, whereupon Roberts directed Warren and his fellow officer to carry appellant and his co-indictee to the jail which was approximately five miles away, and he drove appellant's pickup, thus clearing the Edwards filling station. Upon arrival at the jail, appellant and his companion were booked, required to change into jail clothes and then accompanied several officers into the jail garage where appellant's pickup was stored. At this juncture, Deputy Roberts informed appellant and his co-indictee that the officers had received a message that they were carrying heroin in the pickup and asked their permission to search, to which each replied that as far as they knew there was no heroin in the pickup and that the officers were welcome to look all they wanted. This occurred within a short time after the arrest. Roberts found 16 packages in the heater hose and when Kline arrived approximately one hour and a half later, he found 12 additional packages in the same hose, and a field test was conducted which indicated that the packages contained heroin. (At the trial on the merits it was stipulated that if the chemist from the Department of Public Safety were present, he would testify that he analyzed the contents of the packages and that he found them to contain heroin.)

■ The following morning after Kline had talked several times on long distance to two U.S. Commissioners, full custody of the prisoners was turned over to local au-

thorities and both prisoners were carried before the local Justice of the Peace where bond was set. The multitude of cases cited by appellant need not be discussed because from the record in the case at bar it is one where consent to search was freely given.

Appellant's third ground of error urged was that the trial court erred in admitting the statements made by appellant and his co-indictee while under arrest. The statement objected to was the testimony of the officers in which they say that Roberts asked for and received the consent of appellant and his co-indictee to search the pickup.

■ Appellant cites no authority holding that the giving of consent to search constitutes a confession. He does rely, among other authorities, upon Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441; and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Neither case involves the question of a voluntary consent to search an automobile following a lawful arrest. He also relies heavily on Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. Until the Supreme Court of the United States holds that the rules announced in those cases apply in voluntary consent cases, we will adhere to our former holdings that the fact that appellant was under arrest at the time he consented to the search would not render inadmissible the fruits of the search. See Lucas v. State, Tex.Cr.App., 368 S.W.2d 605, Garrett v. State, Tex.Cr. App., 400 S.W.2d 906, and cases there cited. None of the cases cited by appellant prohibit a voluntary waiver of a constitutional right such as we have found in this case. We also overrule appellant's contention that the trial court erred "in allowing all evidence to be admitted in the trial of appellant for the reason that the appellant was not immediately taken before a magistrate." Appellant's arrest occurred on June 6, 1965, before the effective date of the 1965 Revision, and no confession was taken from

him. Appellant's trial on the merits began on July 13, 1966, after the effective date of the Texas Code of Criminal Procedure, 1965, and after the applicable date (June 13, 1966) of the decision of the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. There being no confession taken from appellant, we find nothing to support his contention in Articles 14.06 and 15.17, Vernon's Ann.C.C.P., 1965, cited by appellant or in Miranda v. State of Arizona, supra.

We overrule appellant's contention that the evidence is insufficient to support the conviction.

Finding no reversible error, the judgment is affirmed.

OPINION
ON APPELLANT'S SECOND
MOTION FOR REHEARING

Since the rendition of our original and amended opinion herein, our attention has been directed to the opinion of the Supreme Court of the United States in Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730.

Texas has a statute similar to Sec. 11611 of the California Health and Safety Code (Article 725d, Sec. 2, Vernon's Ann.P.C.) which authorizes a vehicle which is being used in the unlawful transportation of narcotics to be seized and forfeited to the Texas Department of Public Safety in accordance with the terms of such Article. See also Abrams v. State, Ga., 154 S.E.2d 443.

In addition to what we said in our prior opinion, we now adopt the reasoning of the Supreme Court in overruling appellant's second motion for rehearing.

It is so ordered.